# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 35

**APRIL TERM, A.D. 2023**

**April 21, 2023**

JAMES BULLARD MINTER,

Appellant
(Petitioner),

v.

S-22-0209

THE STATE OF WYOMING,

Appellee
(Respondent).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*

    *Ryan A. Semerad, The Fuller & Semerad Law Firm, Casper, Wyoming.*

*Representing Appellee:*

    *Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kellsie J. Singleton, Senior Assistant Attorney General.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    James Bullard Minter pled guilty in 1999 to misdemeanor sexual battery in Georgia. In 2019, Mr. Minter was living in Casper, Wyoming when a federal agency informed the Wyoming Division of Criminal Investigation (DCI) that it had intercepted a firearm suppressor addressed to Mr. Minter. DCI performed a background check on Mr. Minter and discovered his Georgia conviction. Even though DCI had insufficient information that the crime Mr. Minter was convicted of qualified as a "registerable offense" under the Wyoming Sex Offender Registration Act, it directed the Natrona County Sheriff's Office to inform Mr. Minter that his conviction required him to register as a sex offender in Wyoming.

[¶2]    Mr. Minter registered as directed but filed a petition in district court seeking relief from the requirement, which the court granted. DCI then intervened and moved for relief from the judgment. The court vacated its judgment and granted DCI summary judgment, holding Mr. Minter's misdemeanor conviction in Georgia was the equivalent of felony second-degree sexual abuse of a minor in Wyoming and required that he register. We reverse.

## *ISSUES*

[¶3]    We restate the issues as:

> 1. May DCI rely on dismissed charges to determine the facts or circumstances out of which an alleged sex offender's conviction arose?
>
> 2. May DCI require someone to register as a sex offender before it determines he or she has been convicted of a registerable offense?

## *FACTS*

[¶4]    In 1998, James Minter was living in Georgia. On March 16, 1998, a grand jury for Effingham County, Georgia indicted Mr. Minter on one count of felony child molestation. The indictment read:

> [T]he said James Bullard Minter, on January 16, 1998 in the county aforesaid, did then and there unlawfully an immoral and indecent act, to wit: did rub the genital area of, [DW], a child under 16 years of age, with intent to arouse and satisfy the sexual desires of said accused, contrary to the laws of this state[.]

1

[¶5]    Mr. Minter pled not guilty to the child molestation charge. On December 30, 1999, the State of Georgia offered him a plea agreement by which it would reduce the charge against him to misdemeanor sexual battery, and the parties would jointly recommend a sentence of twelve months with credit for time served. Mr. Minter agreed and completed a sworn statement, which contained no facts concerning his crime and stated, "I plead Guilty to Sexual Battery O.C.G.A. 16-6-22.1." A Georgia court accepted Mr. Minter's plea to the lesser charge and sentenced him to twelve months confinement with credit for time served.

[¶6]    Mr. Minter did not register as a sex offender in Georgia. No law enforcement agency notified him of an obligation to register there, and he believed he was not required to register based on his misdemeanor conviction. In response to an inquiry by DCI, a Georgia official confirmed that Mr. Minter was not on the Georgia registry of offenders.

[¶7]    In August 2007, Mr. Minter moved to Gillette, Wyoming. When he arrived in Wyoming, he researched his obligation to register as a sex offender and found a Wyoming Supreme Court case that he read as saying only those convicted of a felony sex offense had to register in Wyoming.[1] Because he was not convicted of a felony, Mr. Minter believed he was not required to register in Wyoming.

[¶8]    In 2010, Mr. Minter relocated to Natrona County. On December 5, 2019, a United States Customs and Border Protection agent notified DCI that it had intercepted a firearm suppressor addressed to Mr. Minter. On December 12, 2019, the supervisor of DCI's Sex Offender Registration Unit, emailed the following message to the Natrona County Sheriff's Office:

> HSI [Homeland Security Investigations] informed me that there is a sex offender in Natrona County that is not registering. I ran a criminal history and he does have two sex offenses out of GA. I spoke to the AG office and they recommend that he register until we can get court documents. Even though it is a misdemeanor he will still have to register. For sex offeneses (sic) it do[es] not matter if it was a felony or misdemeanor they register. Can you please contact him and let him know he needs to register[?]

---

[1] The case Mr. Minter read was *Snyder v. State*, 912 P.2d 1127, 1129 (Wyo. 1996), which stated that "[u]nder the Act, a sex offender who must register is any person who has been convicted of certain felony sex offenses in which the victim was less than sixteen years of age and the offender was at least four years older than the victim, and that conviction occurred after January 1, 1985."

[¶9]   A lieutenant with the Natrona County Sheriff's Office responded:

> I came in contact with James Bullard Minter and he was leaving for ND. I asked when he will be back and he informed me that it would be December 26th. I advised Mr. Minter that he will have to register in WY and the WY Attorney General Office will determine if he has to register in WY. He said he would be in December 27th and I advised him we will process him which will be the paperwork, prints, and DNA at that time.

[¶10]   Mr. Minter kept his appointment with the Sheriff's Office and did what was asked of him. This included completing a "State of Wyoming Sex Offender Registration Offender Information Form," on which he reported that the age of his sexual battery victim was nine. On January 2, 2020, DCI sent Mr. Minter a document informing him the Attorney General's Office had conducted a legal review of his conviction and concluded his Georgia conviction was equivalent to the Wyoming offense of felony second-degree sexual abuse of a minor. The document also advised him of his registration obligations.

[¶11]   In April 2020, Mr. Minter filed a petition in district court seeking relief from the requirement that he register as a sex offender. He asserted his Georgia conviction was the equivalent of sexual battery under Wyoming law, which is an offense that does not require registration. Alternatively, he contended the comparable Wyoming offense would be third-degree sexual abuse of a minor, an offense that allows for relief from registration after ten years of registration. The State of Wyoming, through the Natrona County District Attorney's Office, joined Mr. Minter's petition. It asserted that "[b]ased on the information the State has it is incredibly difficult to know what the facts or circumstances of Petitioner's conviction were." It contended it therefore had to rely on an elements comparison to determine the equivalent Wyoming offense, which it agreed was sexual battery. It further asserted:

> Finally, a review of Petitioner's criminal history indicates that he has had no criminal activity or convictions since serving his sentence in Georgia. For twenty years he has remained a law abiding citizen. To require him to register 20 years later with no further criminal involvement seems unjust.

[¶12]   On July 20, 2020, the district court granted Mr. Minter's petition. It concluded that insufficient information was available to consider the facts and circumstances of his Georgia conviction. It therefore looked to the elements and determined that the equivalent Wyoming offense was sexual battery. Because sexual battery is not a registerable offense, the court ordered that Mr. Minter shall have no further duty to register as a sex offender.

3

[¶13]   DCI moved to intervene and for relief from the district court's judgment pursuant to W.R.C.P. 60(b)(1), and the court granted both motions. Mr. Minter then filed an amended petition for declaratory relief seeking a declaration that his Georgia conviction did not require registration in Wyoming, that DCI was estopped from requiring him to register, and that DCI's actions violated the Full Faith and Credit Clause of the United States Constitution. The parties thereafter completed discovery and filed cross-motions for summary judgment.[2]

[¶14]   In support of its summary judgment motion, DCI contended it was statutorily authorized to require Mr. Minter to register based on the facts and circumstances of his crime. It argued Mr. Minter had admitted the age of his victim, nine, and based on the victim's age, his sexual battery conviction was the same or similar to second-degree sexual abuse of a minor, in violation of Wyo. Stat. Ann. § 6-2-315(a)(ii). [3]

[¶15]   In support of his summary judgment motion, Mr. Minter argued DCI exceeded its authority when it required him to register without knowledge he had been convicted of a registerable offense. He further contended DCI improperly relied on the information Mr. Minter provided on his registration form, both because it should not have compelled him to supply it, and because it went beyond the actual elements, facts, or circumstances out of which his conviction arose. He also pointed out that the Wyoming offense of second-degree sexual abuse of a child is a specific intent crime, whereas the Georgia offense of sexual battery to which he pled guilty is a general intent crime.

[¶16]   The district court granted DCI summary judgment. It concluded Mr. Minter's criminal history report, which referenced a child molestation charge without indicating its disposition, gave DCI grounds to require Mr. Minter to register pending its receipt of additional information. It further concluded that the age of Mr. Minter's victim was a fact or circumstance of his crime and DCI properly considered it when determining the equivalent Wyoming offense. Mr. Minter timely appealed to this Court.

---

[2] Mr. Minter did not appeal the district court's rulings on his estoppel and full faith and credit claims, and we therefore need not discuss the parties' summary judgment arguments on those claims.

[3] The Georgia offense of sexual battery requires proof of three elements: "(1) physical contact with the victim's intimate body parts; (2) intent to have such contact; and (3) lack of consent on the part of the victim." *Nembhard v. State*, 859 S.E.2d 118, 121 (Ga. Ct. App. 2021) (quoting *Watson v. State*, 777 S.E.2d 677, 678 (Ga. Ct. App. 2015)). Second-degree sexual abuse of a minor, in violation of § 6-2-315(a)(ii), requires proof that "[b]eing sixteen (16) years of age or older, the actor engage[d] in sexual contact of a victim who is less than thirteen (13) years of age." "Sexual contact" means "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts." Wyo. Stat. Ann. § 6-2-301(a)(vi) (2021).

4

[¶17] "Summary judgment is 'an appropriate resolution of a declaratory judgment action' when there are no genuine issues of material fact." *CIBC Nat'l Tr. Co. v. Dominick*, 2022 WY 60, ¶ 14, 509 P.3d 908, 911 (Wyo. 2022) (quoting *Holding v. Luckinbill*, 2022 WY 10, ¶ 11, 503 P.3d 12, 16 (Wyo. 2022)). As with any summary judgment, our review is de novo. *Id*. at ¶ 15, 509 P.3d at 911.

[¶18] The parties agree there are no disputed issues of material fact and that resolution of this appeal depends on our interpretation of the Wyoming Sex Offender Registration Act (WSORA or Act). Questions of statutory interpretation are questions of law that we likewise consider de novo. *Int. of RH v. State*, 2022 WY 33, ¶ 7, 505 P.3d 205, 207 (Wyo. 2022) (citing *Matter of Adoption of ATWS*, 2021 WY 62, ¶ 8, 486 P.3d 158, 160 (Wyo. 2021)).

*DISCUSSION*

[¶19] The Act establishes three levels of offender registration depending on the seriousness of the convicted offense. Wyo. Stat. Ann. § 7-19-302(g) through (j) (2021). It charges DCI with the task of maintaining the central registry and determining the level at which an offender must register. Wyo. Stat. Ann. §§ 7-19-302(o) and 7-19-303(a). The Act also recognizes there may be instances in which DCI will require additional information to identify an offender's crime or equivalent Wyoming offense, and it provides:

> If the division lacks sufficient information or documentation to identify the ***offender's*** crime for which convicted or equivalent Wyoming offense, it shall register the ***offender*** as if he were convicted of an offense listed in subsection (j) of this section. If the division receives additional verifiable information or documentation that demonstrates that the ***offender*** was not convicted of an offense specified under subsection (j) of this section or an offense from any other jurisdiction containing the same or similar elements or arising out of the same or similar facts or circumstances, it shall ***modify the offender's status***.

Wyo. Stat. Ann. § 7-19-302(o) (emphasis added).

[¶20] The district court held subsection 302(o) allowed DCI to require Mr. Minter's registration before it had determined he was convicted of a registerable offense. It reasoned:

The Court finds that it was apparent from Mr. Minter's criminal history that he was born in 1969. And as an adult, he was, in 1998, charged with felony child molestation pursuant to a particular Georgia statute. There was no specific disposition indicated for this charge, and the particular statute referenced requires the alleged victim to be under 16 years of age.

The criminal history also reflected that Mr. Minter had been convicted of misdemeanor sexual battery pursuant to a particular Georgia statute in 2000. It was not unreasonable on this record for DCI to seek additional information or documentation as to the elements and facts and circumstances of Mr. Minter's crime in order to properly identify Mr. Minter's crime or its equivalent Wyoming offense, particularly when Mr. Minter had been charged with molesting a child under 16 years of age.

[¶21] Mr. Minter claims the district court erred in its interpretation of subsection 302(o) and that this subsection authorizes DCI to require registration only after it has first determined that an individual was convicted of a registerable offense. He contends the sole purpose of subsection 302(o) is to allow DCI to provisionally register a person convicted of a registerable offense at the level for those convicted of the most serious offenses (the subsection 302(j) level) until it has verifiable information that the offender should be registered at a different level. He further argues the court erred in allowing DCI to rely on conduct for which he was not convicted to determine whether he committed a registerable offense under the Act.

[¶22] DCI offers two responses. First, it contends that when it directed that Mr. Minter be ordered to register, it had sufficient information to determine he had committed a registerable offense based on the dismissed charge of child molestation in his criminal history report. Second, it argues the district court properly interpreted subsection 302(o) to allow DCI to require registration before it knows an alleged offender was convicted of a registerable offense. We will address DCI's authority in the order of its responses.

## I.    *DCI may not use dismissed charges to determine the facts and circumstances out of which a conviction arose.*

[¶23] DCI's position that it knew Mr. Minter to be an offender when it required him to register is based on its assumption that it may rely on a dismissed charge to determine the facts and circumstances of a conviction. That assumption is flawed.

6

[¶24] Our rules of statutory interpretation govern our reading of the Act. "When interpreting statutes, we seek the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute, giving effect to every word, clause, and sentence." *BC-K v. State*, 2022 WY 80, ¶ 11, 512 P.3d 634, 638 (Wyo. 2022) (quoting *Bernal-Molina v. State*, 2021 WY 90, ¶ 13, 492 P.3d 904, 908 (Wyo. 2021)) (cleaned up). "The plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. Where there is plain, unambiguous language used in a statute there is no room for construction." *Id*. (quoting *Schneider v. State*, 2022 WY 31, ¶ 9, 505 P.3d 591, 594 (Wyo. 2022)). "The 'omission of words from a statute is considered to be an intentional act by the legislature, and this [C]ourt will not read words into a statute when the legislature has chosen not to include them.'" *Id*. (quoting *Hugus v. Reeder*, 2022 WY 13, ¶ 8, 503 P.3d 32, 34 (Wyo. 2022)).

[¶25] Provisions that allow consideration of the conduct underlying a conviction to determine whether it is a registerable offense are "designed to overcome difficulties caused by 'the variations among different jurisdictions in the terminology and categorizations used in defining sex offenses.'" *In re Doe*, 855 A.2d 1100, 1104 (D.C. 2004) (quoting Council of the District of Columbia, Comm. on the Judiciary, Report on Bill 13-350, "The Sex Offender Registration Act of 1999," at 21 (1999)). The Act's language allowing consideration of facts and circumstances to determine an offender's crime accomplishes that goal. There is nothing in the Act, however, to suggest the legislature intended DCI to look beyond the conduct for which an individual was convicted to build a registerable offense. Indeed, the premise of the Act is to the contrary.

[¶26] The Act requires an "offender" to register, and it defines that term.

> "Offender" means ***a person convicted of*** a criminal offense specified in W.S. 7-19-302(g) through (j), 6-2-702, 6-2-703, 6-2-705 or 6-2-706. "Offender" shall also include ***any person convicted***:
>
> > (A) As an accessory before the fact as provided in W.S. 6-1-201 for a criminal offense specified in W.S. 7-19-302(g) through (j), 6-2-702, 6-2-703, 6-2-705 or 6-2-706;
> >
> > (B) Of a criminal offense in Wyoming or any other jurisdiction containing the same or similar elements, or arising out of the same or similar

7

facts or circumstances, as a criminal offense specified in W.S. 7-19-302(g) through (j), 6-2-702, 6-2-703, 6-2-705 or 6-2-706.

Wyo. Stat. Ann. § 7-19-301(a)(viii) (emphasis added); *see also* Wyo. Stat. Ann. § 7-19-302(a) (requiring an "offender" to register).

[¶27]  As defined by the Act, an offender is a person convicted of a registerable offense, not one who has merely been charged with a registerable offense. The Act thus imposes registration requirements based on a conviction, not a charge. *See State, Off. of Att'y Gen., Div. of Crim. Investigation v. Thomason*, 2008 WY 143, ¶ 6, 197 P.3d 144, 145 (Wyo. 2008) ("To be subject to the Act, an individual must meet the definition of 'offender.'"). It follows that the conduct that DCI may consider in determining a registerable offense must be conduct for which the offender was convicted. Other states that allow consideration of conduct underlying an offense to determine equivalence have concluded likewise. *See Doe v. Frisz*, 643 S.W.3d 358, 362-63 (Mo. 2022) (rejecting reliance on abandoned pleadings where offender is defined as one convicted of offense); *Smart v. State*, 846 S.E.2d 172, 174 (Ga. Ct. App. 2020) (refusing to consider sexual conduct alleged in a warrant where state failed to prove defendant was convicted of the conduct); *People v. Hinson*, 94 N.Y.S.3d 738, 739-40 (N.Y. App. Div. 2019) (where defendant was indicted on two counts of third-degree rape and pled guilty to one, government could not rely on indictment to enhance registration based on multiple acts); *State v. Winn*, 435 P.3d 1247, 1253-54 (N.M. Ct. App. 2018) (holding presentence report could not be relied on to determine equivalency where facts in report were not necessarily found by jury).

[¶28]  In *State v. Hall*, for example, the New Mexico Supreme Court interpreted a provision of its sex offender registration act that required "a person convicted of any of twelve enumerated sex offenses, or who is convicted of an equivalent offense in any other jurisdiction, to register as a sex offender[.]" 294 P.3d 1235, 1236 (N.M. 2012). The court began its analysis with a recognition that the sex offender registration act has a remedial purpose, "to protect communities from sex offenders," and should therefore be interpreted broadly. *Id*. at 1239. It thus held that to "determine equivalence, courts must look beyond the elements of the conviction to the defendant's actual conduct." *Id*. In looking to a defendant's actual conduct, though, the court rejected reliance on unsubstantiated allegations. *Id*. at 1242. It instead concluded that "[i]n essence, the question is whether the out-of-state fact-finder necessarily must have found facts that would have proven the elements of the New Mexico registrable offense." *Id*. at 1240.

[¶29]  Because the Wyoming Act likewise requires registration based on a conviction of a registerable offense, we conclude the same limitation applies. The facts or

8

circumstances DCI may consider in determining equivalence must derive from the convicted conduct, not dismissed charges.

[¶30] We are not dissuaded from this reading of the Act by the fact that it is only the victim's age that is at issue in this appeal. If the facts and circumstances that may be considered under the Act include dismissed charges, there is no limit to DCI's ability to require registration based on unproven conduct. Consider for example a defendant charged with second-degree human trafficking of an adult in violation of Wyo. Stat. Ann. § 6-2-703, a registerable offense, but who pleads guilty to misdemeanor false imprisonment in violation of § 6-2-203, a non-registerable offense. Under such a scenario, the State would not have proved any element of the human trafficking charge, and the defendant would not have pled guilty to those elements. Nonetheless, under DCI's interpretation of its authority to consider the facts and circumstances of the conviction, it could rely on the allegations of the dismissed charge to require registration.

[¶31] The Tenth Circuit Court of Appeals has cautioned against such an expansive interpretation of a circumstance-based approach to determining equivalence.

> [T]he Supreme Court has instructed that we also consider the practical difficulties and potential unfairness of applying a circumstance-specific approach, including the burden on the trial courts of sifting through records from prior cases, the impact of unresolved evidentiary issues, and the potential inequity of imposing consequences based on unproven factual allegations where the defendant has pleaded guilty to a lesser offense.

*United States v. White*, 782 F.3d 1118, 1132 (10th Cir. 2015) (citing *Taylor v. United States*, 495 U.S. 575, 601-02, 110 S.Ct. 2143, 2159-60, 109 L.Ed.2d 607 (1990)).

[¶32] Aside from these concerns, an additional flaw in DCI's reliance on a dismissed charge to determine the facts and circumstances underlying a conviction is its presumption that the elements of the dismissed charge could have been proved. We cannot know that. For example, in this case, we do not know why nearly two years after Mr. Minter's indictment, the Georgia prosecutor offered Mr. Minter a plea deal. It is certainly possible that the prosecutor was concerned with proving the charged conduct. And, while Mr. Minter was compelled to complete the offender registration form in Wyoming, he could not have been compelled to testify against himself on the dismissed charge, and we have no way of knowing whether the victim would have been available to testify.[4]

---

[4] It cannot be disputed that Mr. Minter was compelled to register and complete the registration form. The

9

[¶33] In any event, the elements of the dismissed charge, including the victim's age, were not proven or pled to because they were not facts on which Mr. Minter's conviction of the lesser offense depended. Conversely, that the victim was under the age of thirteen is an element of second-degree sexual abuse of a minor in violation of § 6-2-315(a)(ii). *See* Wyo. Crim. Pattern Jury Inst. No. 23.15B. Because that element was not proved and we do not know that it could have been proved, Mr. Minter's conviction for sexual battery cannot be deemed the foreign equivalent of second-degree sexual abuse of a minor. *See Hall*, 294 P.3d at 1240.

[¶34] The Missouri Supreme Court recently confronted a similar situation. In *Frisz*, the defendant was indicted on seventeen counts alleging multiple instances of sodomy and child molestation involving his daughters. 643 S.W.3d at 361. The state reached a plea agreement with the defendant in which he agreed to plead to four counts of endangering the welfare of a child in the first degree, with no sexual component. *Id*. In exchange, the state agreed to dismiss all other counts. *Id*. The lower court reluctantly accepted the plea agreement based on the state's representations regarding the victims' mental states and the state's assessment of its likelihood of success on the original charges. *Id*.

[¶35] Missouri uses a non-categorical approach to determine whether a convicted offense is registerable, which allows a court to look beyond a guilty plea to the underlying facts to determine whether an offense qualifies. *Frisz*, 643 S.W.3d at 362. The sheriff required the defendant to register and defended that decision based on the allegations in the dismissed charges and the victim impact statement of one of the daughters. *Id*. at 362-63. The court rejected both arguments. *Id*. at 362-64. Concerning the allegations in the dismissed charges, the court reasoned:

> SORNA makes clear the offenses must result in a conviction for a person to be considered a sex offender. So, while a sex offense can include a multitude of offenses depending on the underlying circumstances of those offenses, merely alleging a person committed a sex offense does not make that person a sex offender under SORNA. The state alleged Doe committed sex offenses, but Doe pleaded guilty only to offenses that Sheriff Frisz agrees were not sexual in nature. Sheriff Frisz cannot use allegations and charges from offenses for which

---

Sheriff's Office ordered him to do so, and he faced a felony charge if he failed to comply. *See* Wyo. Stat. Ann. § 7-19-307(c) ("A person who knowingly fails to register as required by W.S. 7-19-302 is guilty of a felony punishable by a fine of up to one thousand dollars ($1,000.00), imprisonment for not more than five (5) years, or both.").

the state did not obtain convictions to show the offenses for which Doe actually was convicted were sexual in nature.

*Id*. at 363 (footnote omitted).

[¶36] Concerning the statements in the victim impact statement, the Missouri court observed:

> Victim impact statements are unsworn statements and, by design, allow victims to put before the court facts and circumstances that are not necessarily elements of the charges on which sentence is to be pronounced and regarding which the defendant has not pleaded or been found guilty. Therefore, H.C.'s victim impact statement does not suffice to show the offense to which Doe pleaded guilty was sexual in nature.

*Frisz*, 643 S.W.3d at 364.

[¶37] *Frisz* illustrates the considerations that may compel a prosecutor to reduce charges and the peril of relying on dismissed charges to determine whether an offense is registerable. Nothing in the Wyoming Act requires a different result or suggests the legislature intended a different result. An offender is defined as a person convicted of a registerable offense. The requirement of a conviction makes it clear the legislature intended to allow consideration of only those facts or circumstances for which an individual was convicted.

[¶38] The federal Sex Offender Registration and Notification Act (SORNA) does not compel a different result. Contrary to DCI's assertion, the Wyoming Act is not required to comply with SORNA. As the Tenth Circuit has observed, SORNA does not compel a state to do anything. *White*, 782 F.3d at 1127-28. It instead conditions a state's receipt of certain federal funds on substantial implementation of SORNA's registration requirements. *Id*.; 34 U.S.C. § 20927(a). As a result, while Wyoming may have substantially implemented the requirements of SORNA, the language of the Wyoming Act does not mirror SORNA. The United States Attorney General's guidance on interpreting specific provisions of SORNA is thus of limited value and does not change our task of interpreting the plain language of the Wyoming Act. Moreover, DCI points to no SORNA provision or guidance that suggests it is permissible to look beyond the conduct for which an individual was convicted to determine whether his or her offense is registerable.

[¶39] The federal cases on which DCI relies likewise do not compel a different conclusion. In *White*, the defendant was indicted on a charge of taking indecent liberties

with a child under sixteen years of age and convicted of that offense. 782 F.3d at 1121, 1136. Under those circumstances, the Tenth Circuit held the court could look to the underlying facts to determine the child's precise age. *Id*. at 1136. In *United States v. Mi Kyung Byun*, the defendant pled "guilty to a violation of 8 U.S.C. § 1328, 'importation into the United States of any alien for the purpose of prostitution[.]'" 539 F.3d 982, 983 (9th Cir. 2008). The court held: "Because Byun's plea agreement reveals that she in fact imported a minor for purposes of prostitution, her offense is a 'specified offense against a minor' and she is a sex offender under SORNA." *Id*. at 994. In both cases, the courts looked to the conduct for which the defendants were convicted. Neither stands for the proposition that an alleged offender may be required to register based on dismissed charges.

[¶40] The Georgia cases on which DCI relies are equally unavailing. In *Rogers v. State*, the State of Georgia charged the defendant with aggravated molestation of a child and rape, and he pled to two counts of aggravated assault. 678 S.E.2d 125, 126 (Ga. Ct. App. 2009). The appellate court cited its precedent that "[i]n determining whether the conduct toward the minor was sexual in nature, courts must look to the underlying facts of the conviction in question." *Id*. at 127. It noted the task may include looking to the indictment or accusations, but the court also looked to the plea transcript and final disposition orders to ensure that the aggravated assault convictions were predicated on the facts in the indictment. *Id*. at 127, n. 2.

[¶41] In *Morrell v. State*, the defendant was indicted on two counts of child molestation and pled to two counts of cruelty to children. 677 S.E.2d 771 (Ga. Ct. App. 2009). The appellate court rejected the defendant's argument that the crimes to which he pled were not sexual in nature. It reasoned:

> Contrary to Morrell's argument, the record reflects that he entered an *Alford* plea to two instances of cruelty to children for "causing mental anguish to [the victim]" by committing the acts alleged in the indictment. Those acts, acknowledged by Morrell, involved him touching the breast and buttocks of the 14-year-old victim. Therefore, although Morrell did not plead guilty to a sexual offense, he did plead guilty to "conduct, which, by its nature, is a sexual offense against a minor" which is a "criminal offense against a victim who is a minor" under OCGA § 42-1-12(a)(9)(B)(xi).

*Id*. at 772-73 (footnote omitted).

[¶42] In both *Rogers* and *Morrell*, the clear focus of the appellate court in determining whether the defendants were guilty of sexual offenses was the conduct to which the defendants actually pled guilty. This focus was reaffirmed in a 2020 decision by the

12

Georgia appellate court. *Smart*, 846 S.E.2d 172. In *Smart*, the defendant was convicted of failing to register in Georgia based on an offense committed in Michigan. *Id*. at 173. The appellate court reversed because the state's evidence was insufficient to show that the conduct with which the defendant was charged in Michigan was the conduct for which he was convicted. *Id.* at 174. The court explained:

> Whether Smart was "charged" with a sexual offense involving a minor is not the pertinent question. The issue was whether Smart was *convicted* of a sexual offense involving a minor and whether that *conviction* required Smart to register as a sexual offender in Michigan. The State's evidence on this crucial issue was insufficient. There was no definitive connection between Smart's warrant and sentence sheet, no affirmative testimony that Smart was convicted of the charge listed in the warrant, and no affirmative testimony that Smart's conviction required sexual offender registration in Michigan.

*Id*.

[¶43]  If Mr. Minter had pled guilty in the same manner as the defendants in *Rogers* and *Morrell*, incorporating the allegations of the indictment into his plea, the result in this case would be different. But he did not. His plea contained none of the facts or circumstances of his crime and stated only, "I plead Guilty to Sexual Battery O.C.G.A. 16-6-22.1." His plea thus tells us no more than that he admitted to "(1) physical contact with the victim's intimate body parts; (2) intent to have such contact; and (3) lack of consent on the part of the victim." *Nembhard*, 859 S.E.2d at 121 (quoting *Watson*, 777 S.E.2d at 678). There was no admission to sexual battery of a child, and Mr. Minter was not convicted of sexual battery of a child.

[¶44]  Our conclusion does not, as DCI contends, hinder its ability to classify out-of-state offenders. In that regard, DCI argues that the age of a victim may not be discernible from the elements of a foreign offense, making it impossible for it to determine the equivalent Wyoming offense or proper level of registration if it cannot look to the facts or circumstances underlying the conviction. We understand this, and our decision does not foreclose such an examination.

[¶45]  If a person were convicted of sexual contact with a minor in another state, that would mean he or she either pled guilty to such conduct with a victim under a specified age, or the government proved it. Assuming DCI otherwise has sufficient information to align the foreign conviction with a registerable Wyoming offense, subsection 302(o)

would in that event allow DCI to register the offender under the level (j) until it receives "verifiable information or documentation" of the victim's precise age.[5]

[¶46] The Act authorizes DCI to rely on the facts and circumstances underlying an alleged offender's conviction to determine his or her registerable offense. Based on the Act's plain terms, though, those facts or circumstances include only the conduct for which an alleged offender was convicted. The Act does not authorize DCI to require registration based on dismissed charges or based on charges it believes could have been brought.

[¶47] We turn then to DCI's argument that subsection 302(o) of the Act authorized it to 1) require Mr. Minter to register before it knew him to be an offender; and 2) rely on the information Mr. Minter provided on his registration form to determine his offender status.

## II.     Wyo. Stat. Ann. § 7-19-302(o) does not authorize DCI to require an individual to register as an offender before it has determined he or she was convicted of a registerable offense.

[¶48] Subsection 302(o) authorizes DCI to register an *offender* at the level for the most serious of offenses if it "lacks sufficient information or documentation to identify the *offender's* crime for which convicted or equivalent Wyoming offense[.]" As discussed above, the Act clearly defines an offender as a person convicted of a registerable offense. Wyo. Stat. Ann. § 7-19-301(a)(viii). Thus, with its use of the term "offender" throughout, subsection 302(o) by its plain terms presupposes that the individual DCI is registering is a person convicted of a registerable offense. The provisional registration it authorizes is solely for the purpose of determining the proper level of registration, not for determining whether registration is required in the first place.

---

[5] DCI contends that the victim information Mr. Minter provided on the offender registration form constituted "verifiable information." Mr. Minter challenged the authority of DCI to compel him to register, but he did not argue that the information he provided was not verifiable. Given our disposition of the case, we need not address what constitutes "verifiable information or documentation." We note, however, that although Mr. Minter signed the registration form, it did not purport to be a sworn statement. Additionally, DCI's own policy and procedure states:

> If the division receives additional verifiable information (***certified court documents from the court***) and this demonstrates that the offender was not convicted of an offense listed in subsection (j) of WY Statu[t]e 7-19-302 or an offense from any other jurisdiction containing the same or similar elements or arising out of the same or similar facts or circumstances, the division shall modify the offender status.

*CJIS Policy and Procedure* #3.100 at 2 (emphasis added).

14

[¶49] This interpretation is supported by a reading of subsection 302(o) as a whole. After authorizing DCI to register an offender, the subsection provides that "[i]f the division receives additional verifiable information or documentation that demonstrates that the offender was not convicted of an offense specified under subsection (j) of this section . . ., it shall *modify the offender's status*." Importantly, it specifies what DCI is to do if it finds that subsection (j) is not the correct level; it does not refer to a circumstance in which DCI finds the offender is not required to register at all. Also, it directs DCI to *modify* the offender's status, suggesting a movement between levels, not a removal from the registry. When read as a whole, it is clear that subsection 302(o) contemplates the provisional registration only of someone convicted of a registerable offense.

[¶50] In disputing this interpretation, DCI contends:

> Subsection (o) covers situations where the Division "lacks sufficient information or documentation to identify the offender's crime for which convicted." Wyo. Stat. Ann. § 7-19-302(o). Under Minter's interpretation, the Division cannot contemplate a scenario where it would be able to use subsection (o). How can the Division know **for certain** that the individual is, in fact, an "offender," as defined in Wyo. Stat. Ann. § 7-19-301 if they cannot identify the "offender's crime for which convicted"? Under Minter's interpretation, there would be no point to this language in subsection (o) as the Division would never be able to use it.

[¶51] We disagree. The legislature defined the term offender, and it used that term in subsection 302(o), rather than the term person or individual. We must give effect to the terms the legislature used, and we may not insert or substitute those it did not. *BC-K*, 2022 WY 80, ¶ 11, 512 P.3d at 638. In cases like this one, where DCI had only a sparse criminal history, the way it can determine if the individual is actually an offender is to obtain additional information concerning the conviction.[6]

[¶52] While we understand the desire for expediency in registering an offender, the risk in interpreting this provision otherwise is a wrongful registration, and it is beyond dispute that negative consequences flow from registration as a sex offender. *See, e.g.*, Wyo. Stat. Ann. § 7-19-303(c)(ii) (requiring notification to neighbors within seven hundred fifty feet of an offender registered under level 302(h) or (j)). Yet subsection 302(o) contains no safeguards to protect against the risk of wrongful registration. It places no parameters on

---

[6]Nothing prevents DCI from requesting information from the jurisdiction in which an individual was convicted. DCI's policy and procedure indicates that in making its determination it is to look to certified court documents. *CJIS Policy and Procedure* #3.100.

offenses that can legitimately raise DCI's suspicion that an individual may be an offender, and it imposes no timeframe within which DCI must complete its verification. We conclude the likely reason for that omission is such protections were unnecessary. The legislature took care to ensure that the only persons required to register under subsection 302(o), and any other section of the Act, were those whom DCI had determined were in fact offenders.

[¶53] Indeed, the care with which the Act is drawn is part of the reason we have upheld its constitutionality against challenges it violates the ex post facto clause of the United States Constitution.

> Further, we are not persuaded that Wyoming's Act is excessive because it applies only to persons convicted of sex offenses, and not to those individuals who plead to a lesser charge, whose convictions are overturned, or whose cases are disposed of pursuant to Wyo. Stat. Ann. § 7-13-301. Wyo. Stat. Ann. § 7-19-301(a)(iii). The legislature's identification of individuals convicted of the specified sex offenses constitutes a reasonable basis for determining potential risks to the public, and does not demonstrate that the regulatory scheme is "excessive." We conclude that, in light of the substantial interests at stake, WSORA's requirements constitute a reasonable method of achieving the goal of public safety.

*Kammerer v. State*, 2014 WY 50, ¶ 31, 322 P.3d 827, 839 (Wyo. 2014).

[¶54] Our interpretation of subsection 302(o) does not, as DCI contends, render it meaningless. An example illustrates how we interpret this provision to operate. First-degree sexual abuse of a minor in violation of section 6-2-314(a)(ii) or (iii) is a registerable offense under both levels 302(h) and (j), depending on the age of the victim. Wyo. Stat. Ann. § 7-19-302(h) and (j). However, the elements of that offense will not necessarily identify the precise age of the victim.[7] Thus, in the event of such a conviction,

---

[7] Wyo. Stat. Ann. § 6-2-314 provides:

> (a) An actor commits the crime of sexual abuse of a minor in the first degree if:
>
> . . .
>
> (ii) Being eighteen (18) years of age or older, the actor inflicts sexual intrusion on a victim who is less than eighteen (18) years of age, and the actor is the victim's legal guardian or an individual specified in W.S. 6-4-402;

DCI would know the individual was an offender, but it may not know whether he or she is a level (h) or (j) offender. Subsection 302(o) would allow it to register the offender at level (j), the most serious level, until it receives "verifiable information" of the victim's age. If the victim's age indicates the offense was not a level (j) offense, DCI would be required to modify the offender's status to level (h).

[¶55]  Based on the plain language of Wyo. Stat. Ann. § 7-19-302(o), we conclude the district court erred in interpreting DCI's authority under that subsection. It does not authorize DCI to register someone it merely suspects might be an offender, and it does not authorize DCI to use registration as a means to determine whether an individual has been convicted of a registerable offense.

[¶56]  We thus conclude DCI could not rely on Mr. Minter's statement of his victim's age to make his Georgia conviction the equivalent of second-degree sexual abuse of a minor. Regardless of the information Mr. Minter was compelled to provide on the registration form, he was not convicted of sexual battery of a child, and the registration requirement under the Act hinges on the crime for which an offender is convicted. If there is no conviction for a registerable offense, there is not an offender, and nothing in subsection 302(o) or any other part of the Act authorizes DCI to seek out information beyond a conviction to cobble together a registerable offense.

[¶57]  Because we reverse the district court's rulings concerning DCI's authority under the Act, we need not address Mr. Minter's claim that the rulings ran afoul of his Sixth Amendment protections.

## CONCLUSION

[¶58]  The Act defines an offender as one convicted of a registerable offense. Because the requirement to register as a sex offender is premised on a conviction, DCI may not rely on dismissed charges to determine an individual's registration requirements. Additionally, DCI may not require someone to register before it knows he or she was convicted of a registerable offense.

[¶59]  Reversed.

---

> (iii) Being eighteen (18) years of age or older, the actor inflicts sexual intrusion on a victim who is less than sixteen (16) years of age and the actor occupies a position of authority in relation to the victim.

If the victim of this offense is under eighteen, the offender must register under level (h). Wyo. Stat. Ann. § 7-19-302(h). If the victim is under thirteen, the offender must register under level (j). Wyo. Stat. Ann. § 7-19-302(j).

17