# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 65

APRIL TERM, A.D. 2023

June 27, 2023

JASON EARL ANDERSON,

Appellant
(Defendant),

v.                                                                                       S-23-0016

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
   Christina Cherni, Cowboy Country Criminal Law, Casper, Wyoming.

*Representing Appellee:*
   Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; and John J. Woykovsky, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Jason Earl Anderson entered a conditional plea of guilty to felony possession of methamphetamine. On appeal, he claims the district court erred in denying his motion to suppress evidence obtained from his vehicle after law enforcement stopped him for failing to properly signal a left turn. We affirm.

## ISSUE

[¶2]   This appeal presents a single issue:

> Did law enforcement have a reasonable suspicion that Mr. Anderson committed a traffic violation when he failed to engage his left turn signal for at least 100 feet before making a left turn at a stop sign?

## FACTS

[¶3]   In the early evening of July 30, 2021, Mr. Anderson was traveling in his rental vehicle on C Street in Casper. As he approached a stop sign at the intersection of C Street and McKinley Street, one vehicle was stopped ahead of his. As that vehicle turned, Mr. Anderson activated his left turn signal and pulled forward to the stop sign. He was approximately fifteen to twenty feet from the intersection when he activated his turn signal, and it was on for thirteen seconds before he made his left turn onto McKinley.

[¶4]   Officer Ben Baedke of the Casper Police Department stopped Mr. Anderson for failing to signal for the required 100 feet before turning. Mr. Anderson provided Officer Baedke with his Wyoming driver's license and the rental agreement for his vehicle. Officer Baedke advised him of the reason for the stop and asked why Mr. Anderson was driving a rental vehicle. Approximately five minutes into the stop, two more officers arrived. Officer Baedke asked one of the officers to complete a written warning for Mr. Anderson and the other to escort him from his vehicle, so that he could run his canine, Banjo, around the vehicle.

[¶5]   When Officer Michael Paschke approached Mr. Anderson to ask him to exit the vehicle, he smelled marijuana. Officer Paschke asked Mr. Anderson if he had any on his person or in the vehicle. Mr. Anderson reached into his left pants pocket and handed Officer Paschke a glass marijuana pipe. Banjo did not alert to the presence of controlled substances, but while Officer Paschke was standing with Mr. Anderson, Mr. Anderson told him there was additional marijuana inside the vehicle. Based on that statement, Officer Baedke determined he had probable cause to search Mr. Anderson's vehicle. He found another marijuana pipe with marijuana residue, a glass jar of marijuana, and a capped piece of metal pipe that contained twenty-five grams of methamphetamine.

1

[¶6]   The State charged Mr. Anderson with one count of felony possession of methamphetamine. Mr. Anderson moved to suppress the evidence recovered from his vehicle arguing Officer Baedke lacked reasonable suspicion to believe Mr. Anderson had committed a traffic violation and his stop thus violated the Fourth Amendment. In so arguing, he contended the statute that requires a driver to signal 100 feet before turning does not apply to vehicles stopped at an intersection and that he complied with the statute when he activated his turn signal thirteen seconds before turning. The district court rejected Mr. Anderson's interpretation of the statute, found he had violated it, and denied the motion to suppress. The court further found:

> On this record, there's no persuasive reason or evidence that Mr. Anderson could not have signalled his intent to turn left onto McKinley Street continuously during not less than the last 100 feet traveled before he turned; in other words, this is not a case in which it was impossible for Mr. Anderson to comply with that particular statute.

[¶7]   Mr. Anderson thereafter entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress. In accordance with the plea agreement, the district court entered judgment and sentenced Mr. Anderson to a prison term of four to six years, suspended in favor of three years of supervised probation. Mr. Anderson timely appealed to this Court.

### STANDARD OF REVIEW

[¶8]   Mr. Anderson challenges the denial of his motion to suppress under the Fourth Amendment.[1]

> In reviewing a denial of a motion to suppress evidence, we adopt the district court's factual findings unless those findings are clearly erroneous. *Rodriguez v. State*, 2018 WY 134, ¶ 15, 430 P.3d 766, 770 (Wyo. 2018) (citing *Jennings v. State*, 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016)). We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the

---

[1] Mr. Anderson cited both the Fourth Amendment and the Wyoming Constitution in his statement of the issue, but he provided neither the district court nor this Court with an independent analysis under the Wyoming Constitution. We therefore confine our consideration to the Fourth Amendment. *Gibson v. State*, 2019 WY 40, ¶ 13, 438 P.3d 1256, 1259 (Wyo. 2019) ("[W]e consistently decline to decide cases under the Wyoming Constitution that are not supported by cogent argument in the lower court or on appeal.").

opportunity to "assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." *Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008) (quoting *Hembree v. State*, 2006 WY 127 ¶ 7, 143 P.3d 905, 907 (Wyo. 2006)). "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." *Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009) (citing *Neilson v. State*, 599 P.2d 1326, 1330 (Wyo. 1979)).

*Beckwith v. State*, 2023 WY 39, ¶ 8, 527 P.3d 1270, 1272 (Wyo. 2023) (quoting *Hawken v. State*, 2022 WY 77, ¶ 12, 511 P.3d 176, 180-81 (Wyo. 2022)). "However, the underlying question of whether the search and seizure was constitutional is a question of law, which we review de novo." *Id.* This appeal also presents a question of statutory interpretation, which is likewise a question of law we consider de novo. *Minter v. State*, 2023 WY 35, ¶ 18, 527 P.3d 1249, 1253 (Wyo. 2023) (citing *Interest of RH v. State*, 2022 WY 33, ¶ 7, 505 P.3d 205, 207 (Wyo. 2022)).

### DISCUSSION

[¶9]    "Under the Fourth Amendment, a traffic stop is an investigatory detention that requires reasonable suspicion that a traffic violation has occurred." *Ray v. State*, 2018 WY 146, ¶ 17, 432 P.3d 872, 877 (Wyo. 2018) (citing *Allgier v. State*, 2015 WY 137, ¶ 14, 358 P.3d 1271, 1276 (Wyo. 2015)). Mr. Anderson does not challenge the district court's finding that he failed to signal his left-hand turn for 100 feet before he turned from C Street onto McKinley. He instead claims Officer Baedke lacked reasonable suspicion he had committed a traffic violation because he complied with the statute when he activated his turn signal for thirteen seconds before his turn.[2] He thus contends the district court erred in denying his motion to suppress.

[¶10] Mr. Anderson challenges the district court's interpretation of the applicable statute, which provides in relevant part:

(a) No person shall turn a vehicle or move right or left upon a roadway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided by this section.

---

[2] Mr. Anderson did not renew his argument from below that the 100-foot requirement does not apply when a vehicle comes to a complete stop at an intersection before turning.

(b) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

Wyo. Stat. Ann. § 31-5-217 (2021).

[¶11] Mr. Anderson asserts the objective of this statute is to ensure turns are made safely, and he ensured that safety by activating his turn signal thirteen seconds before he turned. He thus contends he complied with the statute and Officer Baedke lacked reasonable suspicion to stop him. Essentially, Mr. Anderson contends we should interpret the statute to require no more than that a turn be made safely. We must reject this argument because it ignores our rules of statutory interpretation.

[¶12] "When interpreting statutes, we seek the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute, giving effect to every word, clause, and sentence." *Minter*, 2023 WY 35, ¶ 24, 527 P.3d at 1254 (quoting *BC-K v. State*, 2022 WY 80, ¶ 11, 512 P.3d 634, 638 (Wyo. 2022)). "[W]e first look at the plain language used by the legislature. If the statute is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning." *In re BG*, 2023 WY 40, ¶ 10, 528 P.3d 402, 407 (Wyo. 2023) (quoting *Interest of DT*, 2017 WY 36, ¶ 25, 391 P.3d 1136, 1144 (Wyo. 2017)).

[¶13] In some instances, the legislature intends to create alternative means of committing an offense under a statute. *Solis v. State*, 2013 WY 152, ¶ 74, 315 P.3d 622, 638 (Wyo. 2013). Where a statute describes general conduct in one sub-section and specific conduct in another that are in violation of the statute, a showing of either type of conduct is generally sufficient to support a violation of the statute. *Mackley v. State*, 2021 WY 33, ¶ 25, 481 P.3d 639, 646 (Wyo. 2021) ("Subsection (b) therefore identifies specific conduct that is a subset of the more general category of reckless endangering. Mr. Mackley . . . was charged under subsection (a), which only required that he recklessly engaged in conduct which placed P.V. in danger of death or serious bodily injury.").

[¶14] Wyo. Stat. Ann. § 31-5-217 is not ambiguous, and Mr. Anderson does not contend otherwise.[3] By its plain terms it imposes two requirements when a driver is making a turn: 1) the movement must be made with reasonable safety; and 2) it must not be done

---

[3] In *State v. Juarez*, this Court held the signal requirement does not apply when a vehicle merges from an entrance ramp onto the interstate because there was no movement left or right. 2011 WY 110, ¶¶ 12, 13, 256 P.3d 517, 520-21 (Wyo. 2011). In so ruling, we noted the statute's applicability to merging was ambiguous. *Id.* There is no such ambiguity in the statute as it applies to turning left or right.

4

"without giving an appropriate signal in the manner provided[.]" Wyo. Stat. Ann. § 31-5-217(a). Subsection 217(b) specifies the manner of the signal and requires that it "be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning." Under our rules of statutory interpretation, we are not at liberty to ignore one of the two requirements, the use of a turn signal for the specified distance. Nor may we substitute a length of time for that specified distance. *Minter*, 2023 WY 35, ¶ 51, 527 P.3d at 1259 ("We must give effect to the terms the legislature used, and we may not insert or substitute those it did not.") (citing *BC-K*, 2022 WY 80, ¶ 11, 512 P.3d at 638); *see also State v. Kelly*, 211 P.3d 932, 937 (Or. Ct. App. 2009) (rejecting argument that use of signal for a safe duration satisfies statute's distance requirement).

[¶15] We also reject Mr. Anderson's argument that the district court improperly assumed his state of mind when it found he was able to properly signal before his turn. He argues:

> The district court states that because Mr. Anderson *could* have activated the turn signal sooner than (sic) he violated subsection (b). The court interjected into the brain of Mr. Anderson and assumed that Mr. Anderson knew he would turn left prior to when he activated his turn signal. However, many logical situations indicate the opposite. Mr. Anderson was driving a rental vehicle that he obtained just prior to the traffic stop due to issues with his personal vehicle. We don't know when Mr. Anderson decided he needed to turn left, however, we do know that when Mr. Anderson decided to turn left, he signaled for thirteen seconds prior to making his turn.

[¶16] The record contains no evidence that Mr. Anderson delayed signaling his turn because of indecision, and he provides no record cites for the assertions in this argument. He has therefore failed to show the district court's finding that he could have properly signaled his turn was clearly erroneous. Additionally, even if his intent to turn was formed at a point that made it impossible to comply with the 100-foot requirement, it would not have undermined Officer Baedke's reasonable suspicion. As one court explained:

> The plain language of Indiana Code section 9–21–8–25 provides that the requirement to signal is contingent upon an intention to turn. However, although Peak may have formed the intent to turn while stopped at the traffic light, that does not affect the result here. Peak might have raised a defense at trial that he lacked the intent to turn during the 200 feet, but the reasonable suspicion analysis looks at the totality of the

circumstances leading up to a traffic stop to determine whether the officer had a particularized and objective basis for the stop. Failure to signal within the required distance is objective evidence of failure to comply with the statute. Thus, Peak's alleged subjective lack of an intent would not preclude the officers from having an objective, reasonable suspicion that the turn signal law had been violated.

*Peak v. State*, 26 N.E.3d 1010, 1015 (Ind. Ct. App. 2015).

[¶17] Finally, we are not persuaded to depart from our reading of the clear and plain language of Wyo. Stat. Ann. § 31-5-217 by Mr. Anderson's argument that the 100-foot requirement leads to illogical results because it is at times impossible to comply with the law. As the Vermont Supreme Court has observed:

Although we are compelled to uphold the application of § 1064(d) in this case, we agree with defendant that the statute goes well beyond the safety concerns that it purports to implement and is constantly violated, even by safety-conscious drivers. It is difficult to see why other users of the road need a motorist approaching an intersection marked by a stop sign or signal to indicate his or her intention to turn well in advance of actually making the turn. Indeed, for no apparent reason, the statute prohibits a motorist from approaching an intersection and determining *at the intersection*—after stopping at a sign or signal as required—his or her future direction. As a consequence, when a motorist is not familiar with his or her surroundings, the motorist often must violate the law to determine his or her desired direction. In effect, the statute precludes a motorist from turning at any intersection without knowing well in advance the direction he or she will go. We therefore urge the Legislature to reexamine the statute and narrow its operation within more reasonable limits.

*State v. Fletcher*, 996 A.2d 213, 219 (Vt. 2010).

[¶18] While we may be sympathetic to the arguments that it is not always possible to comply with the law, and it may not be the only or even best way to ensure safety, we cannot ignore the statute's plain language. The wisdom of the 100-foot requirement is for the legislature to address.

[¶19] Affirmed.