# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 10

**OCTOBER TERM, A.D. 2023**

**January 24, 2024**

SHAUN THOMAS KOBIELUSZ,

Appellant
(Defendant),

v.

S-23-0020

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
The Honorable Matthew F.G. Castano, Judge

*Representing Appellant:*
    Devon Petersen, Fleener Petersen, LLC, Laramie, Wyoming.

*Representing Appellee:*
    Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, JJ, and FROELICHER, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**FROELICHER, District Judge.**

[¶1]     Shaun T. Kobielusz appeals from his convictions of three counts of voyeurism following a jury trial.  Mr. Kobielusz raises three issues on appeal.  First, Mr. Kobielusz contends there was insufficient evidence of the element of "looking" for the jury to convict him of voyeurism.  Next, he argues the jury instruction given on the elements of voyeurism was improper.  Finally, Mr. Kobielusz asserts the district court erred when it denied his motion to suppress videos on a memory card given to law enforcement by his wife.  We affirm.

## *ISSUES*

[¶2]     We restate the issues as:

1.     Was there sufficient evidence of "looking" for a jury to convict Mr. Kobielusz of voyeurism?

2.     Was the jury instruction given by the district court defining the elements of voyeurism plain error?

3.     Did the district court abuse its discretion when it denied Mr. Kobielusz's motion to suppress videos given to law enforcement by his wife?[1]

## *FACTS*

[¶3]     Mr. Kobielusz was married to P.K. from 2009 until 2021.  Prior to August 15, 2017, Mr. Kobielusz, P.K, and their two daughters, A.K. and L.K. resided in a residence on Mr. Kobielusz's family ranch.  On August 15, 2017, Mr. Kobielusz and P.K. separated, and P.K. and their two daughters moved from the ranch into a townhouse in Sheridan, Wyoming. Mr. Kobielusz continued to reside at the family ranch.  In November 2020, Mr. Kobielusz and P.K. decided to try to reconcile, and P.K., A.K., and L.K. moved back to the family ranch to live with Mr. Kobielusz.

[¶4]     Beginning on November 9, 2020, P.K. stayed home from work to quarantine after a positive test for Covid-19.  On November 10, 2020, while cleaning their residence, P.K. discovered a manual for digital clocks.  The manual indicated the digital clocks included a high-definition video camera.  P.K. located three of the digital clocks with video cameras in the residence.  One clock was on a fireplace in the master bedroom, another was in a

---

[1] Mr. Kobielusz's initial brief also asserted the district court erred when it denied his motion to strike a juror for cause.  In his reply brief and at oral argument, Mr. Kobielusz withdrew his juror excusal argument because the juror was an alternate and was excused prior to deliberations.

1

hallway bathroom on top of the toilet, and the third was in the master bathroom on the toilet. The hallway bathroom is a communal bathroom routinely used by Mr. Kobielusz, P.K., and their two daughters.

[¶5]   P.K. found memory cards in the digital clocks in the hallway bathroom and the master bathroom. P.K. removed the two memory cards, put them in her pocket, and took possession of the memory cards.

[¶6]   Eventually, P.K. watched several of the videos contained on the memory cards using a friend's memory card reader. The memory card from the master bathroom digital clock had no videos. The memory card from the hallway bathroom digital clock included many video clips, each approximately three minutes long. One of the videos viewed by P.K. showed Mr. Kobielusz using the bathroom and another showed L.K. using the bathroom. On November 15, 2020, after viewing those two videos, P.K. contacted a deputy with the Sheridan County Sheriff's Office (SCSO). P.K. informed the deputy she had watched a few of the videos and two videos showed Mr. Kobielusz and A.K. using the bathroom and nudity. On December 15, 2020, P.K. gave the memory cards to a SCSO deputy. The deputy viewed the videos on the memory cards.

[¶7]   P.K. confronted Mr. Kobielusz about the digital clocks with video cameras on November 10, 2020. Mr. Kobielusz told P.K. he used the cameras in the digital clocks to surveil the house and that he bought the clocks when he and P.K. decided to reconcile "in hopes of getting sneak peaks of you." P.K. remained at the residence that night, but she slept on the couch. On November 11, 2020, P.K., A.K., and L.K. moved back into the townhouse in town. Mr. Kobielusz wrote P.K. a letter apologizing for his actions and behavior, offering to walk through the house and show her his phone to prove he had nothing to hide, and stating he would leave her in control of all electronics.

[¶8]   The memory card from the hall bathroom included 121 videos recorded between October 31, 2020, and November 10, 2020. Several videos showed P.K., A.K. and L.K. using the bathroom. Neither A.K. nor L.K. knew the cameras were in the bathroom and neither consented to being videoed. There were also videos of Mr. Kobielusz using the bathroom.

[¶9]   Mr. Kobielusz maintained an Amazon account. Three hidden spy camera clocks and several memory cards were purchased by him using his Amazon account and a credit card in January of 2020. Mr. Kobielusz's phones, computer, and tablet were not linked to the clock cameras or videos. P.K. testified she did not place the digital clocks in the bathrooms.

[¶10]  On April 12, 2021, the State charged Mr. Kobielusz with three counts of voyeurism in violation of Wyo. Stat. Ann. § 6-4-304(b)(i) (2019). Count I charged Mr. Kobielusz with recording videos of A.K. using the bathroom without her consent. Count II charged

2

Mr. Kobielusz with recording videos of L.K. using the bathroom without her consent. Count III charged Mr. Kobielusz with recording videos of P.K. using the bathroom without her consent. On May 25, 2021, Mr. Kobielusz entered pleas of not guilty to all three counts and requested a jury trial.

[¶11]  On November 30, 2021, Mr. Kobielusz filed a motion to suppress all evidence obtained from the memory cards given to law enforcement by P.K. The district court conducted a hearing on the motion on July 6, 2022, and denied the motion in a written order on July 12, 2022.

[¶12]  On August 31, 2022, a jury returned a verdict finding Mr. Kobielusz guilty of all three counts. The district court sentenced Mr. Kobielusz to a minimum of one to two years on each count. The sentences for Counts II and III were to run concurrently but consecutively to Count I. Mr. Kobielusz timely appealed.

## DISCUSSION

### A.    Voyeurism Statute

[¶13]  The State charged Mr. Kobielusz with three counts of voyeurism in violation of Wyo. Stat. Ann. § 6-4-304(b)(i) (2019).[2] Mr. Kobielusz's first two arguments require the Court to interpret the voyeurism statute.

[¶14]  That version of the voyeurism statute provided:

> (a) A person is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if he, without the consent of the person being viewed, commits the crime of voyeurism by looking in a clandestine, surreptitious, prying or secretive nature into an enclosed area where the person being viewed has a reasonable expectation of privacy, including, but not limited to:
> > (i) Restrooms;
> > (ii) Baths;
> > (iii) Showers; or
> > (iv) Dressing or fitting rooms.
> (b) A person is guilty of a felony punishable by imprisonment for not more than two (2) years, a fine of not more than five thousand dollars ($5,000.00), or both, if he:

---

[2] The voyeurism statute was amended as of April 7, 2021.

(i) Commits the offense specified in subsection (a) of this section by knowingly or intentionally capturing an image by means of a camera, a video camera or any other image recording device; or

(ii) Uses a camera, video camera or any other image recording device for the purpose of observing, viewing, photographing, filming or videotaping another person under the clothing being worn by the other person where that other person has not consented to the observing, viewing, photographing, filming or videotaping.

Wyo. Stat. Ann. § 6-4-304.

[¶15] Mr. Kobielusz contends the voyeurism statute requires proof of all elements in subsection (a) and in subsection (b)(i) to prove guilt under § 6-4-304(b)(i). Specifically, Mr. Kobielusz asserts the element of "looking," which is expressly included in subsection (a), must also be proved to convict under subsection (b)(i). According to Mr. Kobielusz, the State must prove he "knowingly or intentionally captur[ed] an image by means of a camera, a video camera or any other image recording device" and that he looked at or viewed the captured images.

[¶16] The State counters that the "looking" element of subsection (a) is satisfied in subsection (b)(i) if there is proof that Mr. Kobielusz "knowingly or intentionally captur[ed] an image by means of a camera, a video camera or any other image recording device." In other words, the State argues it need not prove Mr. Kobielusz looked at the videos so long as it proved he "knowingly or intentionally captur[ed] an image by means of a camera, a video camera or any other image recording device."

[¶17] When interpreting statutes, we must determine the intent of the legislature. We do this by looking first at the plain language of the statute. *Skoric v. Park County Circuit Court, Fifth Judicial District*, 2023 WY 59A, ¶ 9, 532 P.3d 667, 669-70 (Wyo. 2023).

> "If the statute is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning." *In re BG*, 2023 WY 40, ¶ 10, 528 P.3d 402, 407 (Wyo. 2023). A statute is clear and unambiguous if "its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability." *Id.* (quoting *Spence v. Sloan*, 2022 WY 96, ¶¶ 34–35, 515 P.3d 572, 581–82 (Wyo. 2022)). Dictionary definitions may be used to determine the plain and ordinary meaning of statutory language. *Belle Fourche Pipeline Co. v. State*, 766 P.2d 537, 542 (Wyo. 1988). We must also consider

> statutory language *in pari materia*, which means "we construe statutes as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statutes on the same subject." *E.g.*, *BG*, ¶ 10, 528 P.3d at 407 (quoting *Spence*, ¶¶ 34–35, 515 P.3d at 581–82); *Hill v. Value Recovery Grp., L.P.*, 964 P.2d 1256, 1258 (Wyo. 1998); *see also Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1042–43 (Wyo. 1993) (identifying the obligation to find the plain and obvious meanings of words and also to construe those same words *in pari materia*).

*Id.*

[¶18]   We conclude subsection (b)(i) is sufficiently clear and unambiguous.  The element of "looking" included in subsection (a) is satisfied in subsection (b)(i) by proof that a defendant "knowingly or intentionally captur[ed] an image by means of a camera, a video camera or any other image recording device."  Both the "looking" element in subsection (a) and the "knowingly or intentionally capturing an image" element in subsection (b)(i) immediately follow the word "by."  Based upon the arrangement of the words and their connection to each other, the voyeurism statute makes subsection (b)(i) an alternative to or different crime than subsection (a) by requiring a more specific type of "looking." When construing statutes in pari materia, we give effect to every word, clause, and sentence according to their arrangement and connection. *Blevins v. State*, 2017 WY 43, ¶ 27, 393 P.3d 1249, 1256 (Wyo. 2017) (*quoting Cheyenne Newspapers, Inc. v. Bd. of Trustees of Laramie Co. Sch. Dist. No. One,* 2016 WY 113, ¶ 10, 384 P.3d 679, 683-84 (Wyo. 2016). To be convicted of the felony in subsection (b)(i) the State must prove a defendant looked by "knowingly or intentionally capturing an image by means of a camera, a video camera or any other image recording device." The legislature's use of the word "by" in both subsection (a) and subsection (b)(i) showed its intent to create a separate offense in subsection (b)(i) as opposed to just an enhanced version of the offense in subsection (a).

[¶19]  Mr. Kobielusz's interpretation also requires the Court to add words to subsection (b)(i).  Subsection (a) concerns the act of looking into an enclosed area and does not mention or suggest looking at an image or video.  Under Mr. Kobielusz's construction, subsection (b)(i) would need to include the phrase "and looks at the recorded image or video" at the end of the subsection.  This Court may not add words to a statute and may not render any part of a statute meaningless. *Adekale v. State*, 2015 WY 30, ¶ 13, 344 P.3d 761, 765-766 (Wyo. 2015).

[¶20]  Our interpretation is supported by the legislature's drafting of other criminal offenses.  The legislature has demonstrated in other criminal statutes that it knows how to simply include an additional element or elements to a misdemeanor crime to make it a

felony. For example, in the larceny statutes and the property destruction statutes, the sole difference between a misdemeanor offense and a felony offense is the value of the property taken or damaged. *See*, Wyo. Stat. Ann. §§ 6-3-402 and 6-3-201. Likewise, in the burglary statute, proof of aggravated burglary requires proof of all the elements of burglary plus one of the additional elements listed in Wyo. Stat. Ann. § 6-3-301(c). In other words, had the legislature intended to simply include additional elements to distinguish felony voyeurism from misdemeanor voyeurism, it would have used language and structure similar to the larceny, property destruction, and burglary statutes. "The omission of words from a statute is considered to be an intentional act by the legislature, and this Court will not read words into a statute when the legislature has chosen not to include them." *Minter v. State*, 2023 WY 35, ¶ 24, 527 P.3d 1249, 1254 (Wyo. 2023) (quoting *BC-K v. State*, 2022 WY 80, ¶ 11, 512 P.3d 634, 638 (Wyo. 2022)).

[¶21] Therefore, reading the plain language of the voyeurism statute in pari materia and giving effect to every word, clause, and sentence, we conclude the elements of § 6-4-304(b)(i) are: (1) the Defendant; (2) without the consent of the person being viewed; (3) in a clandestine, surreptitious, prying or secretive nature; (4) knowingly or intentionally; (5) captured by means of a camera, a video camera or any other image recording device; (6) an image of a person in an enclosed area where the person being viewed has a reasonable expectation of privacy. In other words, the element of "looking" in subsection (a) is satisfied in subsection (b)(i) by proof of "knowingly or intentionally capturing an image by means of a camera, a video camera or any other image recording device." To prove the elements of subsection (b)(i), the State need not prove Mr. Kobielusz looked at or viewed the captured videos.

## B.     Sufficiency of the Evidence

### 1.     Standard of Review

[¶22] When presented with a sufficiency of the evidence claim, this Court determines "whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented." *Morones v. State*, 2020 WY 85, ¶ 8, 466 P.3d 300, 303 (Wyo. 2020) (quoting *Gonzalez-Chavarria v. State*, 2019 WY 100, ¶ 22, 449 P.3d 1094, 1099 (Wyo. 2019)). Specifically:

> "we assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence." *Morones*, ¶ 8, 466 P.3d at 303 (citing *Gonzalez-Chavarria*, ¶ 22, 449 P.3d at 1099). After examining the State's evidence, whether direct or circumstantial, we "do not substitute our judgment for that of jury," but instead, "we determine whether a jury could have reasonably concluded

6

each of the elements of the crime was proven beyond a reasonable doubt." *Andersen v. State*, 2014 WY 88, ¶ 23, 330 P.3d 256, 264 (Wyo. 2014) (quoting *Guerrero v. State*, 2012 WY 77, ¶ 14, 277 P.3d 735, 738-39 (Wyo. 2012)). Furthermore, we defer to the jury as the fact-finder, and "assume [the jury] believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt." *Foltz v. State*, 2017 WY 155, ¶ 10, 407 P.3d 398, 401-02 (Wyo. 2017) (citations omitted). Ultimately, our standard of review is not whether the evidence is sufficient for us, "but whether, when viewed favorably to the state, it was enough on which a jury could form a reasonable inference of guilt beyond a reasonable doubt." *Pena*, ¶ 37, 98 P.3d at 872; *Bouwkamp v. State*, 833 P.2d 486, 493 (Wyo. 1992) (citation omitted).

*Snyder v. State*, 2021 WY 108, ¶ 50 496 P.3d 1239, 1253 (Wyo. 2021).

## 2. Analysis

[¶23]  Mr. Kobielusz contends there was insufficient evidence he looked at or viewed any of the captured images and videos.  Having determined the element of "looking" included in subsection (a) of the voyeurism statute is satisfied in subsection (b)(i) by proof that Mr. Kobielusz "knowingly or intentionally captur[ed] an image by means of a camera, a video camera or any other image recording device," Mr. Kobielusz's argument must be rejected. Because the State was not required to prove Mr. Kobielusz looked at the captured videos for the jury to find him guilty of violating subsection (b)(i), whether there was sufficient evidence Mr. Kobielusz looked at or viewed the videos is irrelevant.  The State did not have to prove beyond a reasonable doubt that Mr. Kobielusz looked at or viewed the videos.

## C.  Voyeurism Jury Instruction

### 1.  Standard of Review

[¶24]  This Court's review of a district court judge's decision to give or not give a jury instruction is for an abuse of discretion.  *Walker v. State*, 2022 WY 158, ¶ 17, 521 P.3d 967, 976 (Wyo. 2022) (quoting *Farrow v. State*, 2019 WY 30, ¶ 12, 437 P.3d 809, 815 (Wyo. 2019)).  The plain error standard is applied, however, when there is no objection to the challenged jury instruction.  *Id.*  To find plain error, the appellant must show:  (1) the record clearly reflects the alleged error; (2) a violation of a clear and unequivocal rule of law in a clear and obvious manner; and (3) the appellant was denied a substantial right which caused the appellant material prejudice.  *Id.*  The district court judge has significant discretion in crafting jury instructions, "so long as they correctly state the law and fairly

7

and adequately cover the issues presented." *Mackley v. State*, 2021 WY 33, ¶ 17, 481 P.3d 639, 643 (Wyo. 2021) (quoting *Farrow*, ¶ 12, 437 P.3d at 815)). "Jury instructions shall not be ruled defective absent a showing that the instructions confused or misled the jury as to the proper principles of law and prejudiced the defendant." *Walker*, ¶ 17, 521 P.3d at 976 (quoting *Baker v. State*, 2010 WY 6, ¶ 31, 223 P.3d 542, 555 (Wyo. 2010)).

### 2. Analysis

[¶25]   The district court gave the following instruction on the elements of voyeurism as to each count charged under § 6-4-304(b)(i):

> 1.      On or about November 1, 2020 through November 10, 2020;
> 2.      In Sheridan County, Wyoming;
> 3.      The Defendant, Shaun Kobielusz;
> 4.      Knowingly;
> 5.      Without the consent of the person being viewed, [A.K., L.K., or P.K.];
> 6.      Looked in a secretive nature;
> 7.      Into an enclosed area where the occupant being viewed had a reasonable expectation of privacy;
> 8.      Captures an image by means of a camera, video camera or any other image recording device.

The instruction also informed the jury it must find each of the elements had been proved beyond a reasonable doubt.  Mr. Kobielusz and the State agree there was no objection to the instruction at trial; therefore, we apply the plain error standard.

[¶26]   The alleged error, the elements jury instruction, was preserved in the record; therefore, the record clearly reflects the error asserted by Mr. Kobielusz.  Mr. Kobielusz contends the given elements instructions violated a clear and unequivocal rule in a clear and obvious manner because the instruction deviated from the Wyoming Pattern Criminal Jury Instruction (W.P.Cr.J.I.), and it did not require the jury to find Mr. Kobielusz captured a video ***and*** looked at the captured video.  As we determined earlier, the element of "looking" included in subsection (a) of the voyeurism statute is satisfied in subsection (b)(i) by proof that Mr. Kobielusz "knowingly or intentionally captur[ed] an image by means of a camera, a video camera or any other image recording device."  Therefore, the district court's elements instruction did not violate a clear and unequivocal rule of law by not requiring the jury to find Mr. Kobielusz captured an image ***and*** looked at that image.

[¶27]   There is no dispute that the given elements instruction was not exactly like the one provided in the W.Cr.P.J.I.  W.Cr.P.J.I. 43.04(B), which covers § 6-4-304(b)(i), provides:

8

1.	On the ___ day of _____, 20 _____

2.	In _____ County, Wyoming

3.	The Defendant, _____

4.	[Knowingly] [intentionally]

5.	Without the consent of the person being viewed

6.	Looked in a [clandestine] [surreptitious] [prying] [secretive] nature

7.	Into an enclosed area where the occupant being viewed had a reasonable expectation of privacy

8.	And captured an image of the occupant by means of a(n) [camera] [video camera] [image recording device] in the enclosed area.

[¶28]  The Wyoming pattern jury instructions serve only as a guide to counsel and the court.  *Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo. 1992).  Although we agree the given instruction was somewhat grammatically confusing, we cannot conclude the given instruction violated a clear and unequivocal rule of law or that the given instruction caused Mr. Kobielusz material prejudice.  The elements of section (b)(i) of the voyeurism statute are:  (1) the Defendant; (2) without the consent of the person being viewed; (3) in a clandestine, surreptitious, prying or secretive nature; (4) knowingly or intentionally; (5) captured by means of a camera, a video camera or any other image recording device; (6) an image of a person in an enclosed area where the person being viewed has a reasonable expectation of privacy.  Although the given jury instruction unnecessarily included a separate element of "looked," it required the jury to find beyond a reasonable doubt each of the essential elements.  That instruction required the jury to find beyond a reasonable doubt Mr. Kobielusz, without the consent of A.K., L.K., or P.K., in a secretive nature, knowingly captured an image of them in an enclosed area where they had a reasonable expectation of privacy, by means of a camera, video camera, or other image recording device.

[¶29] Mr. Kobielusz has not established he was denied a substantial right and was materially prejudiced.  His only claim to material prejudice is that the jury instruction did not require the jury to find he captured the video images and looked at the video images.  As we have previously determined, the element of looking included in subsection (a) of the voyeurism statute is accomplished by proof that a Mr. Kobielusz "knowingly or intentionally captur[ed] an image by means of a camera, a video camera or any other image

9

recording device." In other words, the "looking" element in subsection (a) is proved in subsection (b)(i) by showing a defendant "knowingly or intentionally captur[ed] an image by means of a camera, video camera, or any other image recording device."

### D.    Motion to Suppress

#### 1.    Standard of Review

[¶30]  A district court's denial of a defendant's motion to suppress is reviewed using the following standard:

> We review the district court's factual findings on a motion to suppress for clear error. We defer to those findings and view the evidence in the light most favorable to the prevailing party because the district court is in the best position to weigh the evidence, assess the credibility of witnesses, and make the necessary inferences, deductions, and conclusions. However, we review the ultimate determination regarding the constitutionality of a particular search or seizure de novo.

*Clay v. State*, 2016 WY 55, ¶ 14, 372 P.3d 195, 197 (Wyo. 2016) (quoting *Allgier v. State*, 2015 WY 137, ¶ 11, 358 P.3d 1271, 1275 (Wyo. 2015)).

#### 2.    Analysis

[¶31]  Mr. Kobielusz argues P.K., his wife, could not consent to law enforcement's search of the memory cards she removed from the digital clocks. Mr. Kobielusz contends he exclusively controlled the memory cards and P.K. never used the memory cards. The State contends P.K.'s consent to search the memory cards was valid because she had common authority and joint access to the memory cards.

[¶32]  The Fourth Amendment to the United States Constitution "protects individuals from unreasonable searches and seizures." *Jennings v. State*, 2016 WY 69, ¶ 9, 375 P.3d 788, 790 (Wyo. 2016) (citations omitted). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Warrantless searches are per se unreasonable unless the search is supported by probable cause or a recognized exception. *Hawken v. State*, 2022 WY 77, ¶ 16, 511 P.3d 176, 182 (Wyo. 2022). "A search conducted pursuant to valid consent is a recognized exception to the warrant requirement." *Id. (*citing *Johnson v. State*, 2010 WY 47, ¶ 7, 228 P.3d 1306, 1310 (Wyo. 2010). A third party who has common authority over or other sufficient relationship to the premises may consent to a search of the premises. *Baker*, ¶ 12, 223 P.3d at 547 (quoting *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Jones v. State*, 902 P.2d 686, 690 (Wyo. 1995) (finding it was reasonable for law enforcement to believe an individual had common authority over a trailer because the individual was 19 years old, he was sitting in the living room of the trailer watching television, he said he lived in the trailer, and he told law enforcement he had a dog at the trailer). As we noted in *Baker*, the U.S. Supreme Court, in *Matlock*, stated:

> The authority which justifies the third-party consent rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. 164, 171 at n. 7, 94 S.Ct. 988.

[¶33] We conclude P.K. had common authority over and/or other sufficient relationship to the memory cards to permit her to consent to the search of the memory cards. The undisputed facts establish: the memory cards were in the home P.K. shared with Mr. Kobielusz as a married couple and in rooms used and shared by P.K. and Mr. Kobielusz; the memory cards were easily accessible and easily removed from the digital clocks; and P.K. found the memory cards, took control of the memory cards, and used the memory cards because she opened them to determine what was on them. There was no evidence that either the digital clocks or the memory cards were protected by passwords. As soon as P.K. became aware of the existence of the memory cards, she had the same access and control over them as Mr. Kobielusz.

[¶34] Mr. Kobielusz relies on the U.S. Supreme Court's holding that a search warrant is generally required for law enforcement to search the data on a smart phone. *Riley v. California*, 573 U.S. 373, 401, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014). We conclude the holding and reasoning for that holding in *Riley* supports the district court's decision in this case. The privacy concerns for memory cards in this case are significantly different than privacy concerns regarding a cell phone. Unlike a cell phone, these memory cards were not password protected, Mr. Kobielusz did not keep the cards close to him, there are no applications on the cards, these memory cards contained only videos and no other private information, and the cards cannot access information stored remotely. *Id.* 573 U.S. 393-

11

398; s*ee also United States v. Andrus*, 483 F.3d 711, 718 (10th Cir. 2007) ("Because intimate information is commonly stored on computers, it seems natural that computers should fall into the same category as suitcases, footlockers, or other personal items that 'command[ ] a high degree of privacy.' ").[3]

### *CONCLUSION*

[¶35]   There was sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt  Mr. Kobielusz violated § 6-4-304(b)(i) of the voyeurism statute.  Mr. Kobielusz was not substantially prejudiced by the district court's jury instruction on the elements of § 6-4-304(b)(i).  The district court did not abuse its discretion in denying Mr. Kobielusz's motion to suppress the videos contained on the memory cards.  Therefore, we affirm his conviction.

---

[3] Typically, law enforcement would have to obtain a warrant in order to look at files on a memory card. *See United States v. Palms*, 21 F.4th 689, 698 (10th Cir. 2021).  However, because P.K. had common authority over the memory cards and she consented to the search, law enforcement did not need a warrant.